**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE ESTATE OF MARY KAY CAPLINGER, by RAYMOND CAPLINGER as Independent Administrator of the Estate of Mary Kay Caplinger,<br><br>    Plaintiff,<br><br>vs.<br><br>TIME INSURANCE COMPANY f/k/a FORTIS INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL NO. 06-43-GPM<br>)<br>)<br>)<br>)<br>)<br>) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

   This matter came before the Court on June 18, 2007, for a hearing on a motion for summary judgment filed by Defendant Time Insurance Company, f/k/a Fortis Insurance Company (hereinafter "Time") (Doc. 28). For the reasons set forth below, the motion is granted.

### BACKGROUND

   Plaintiff, Raymond Caplinger (hereinafter "Caplinger"), filed his complaint on January 19, 2006, alleging that Time wrongfully terminated an individual health insurance policy which provided benefits to him and his wife, Mary Caplinger, now deceased.

   He seeks actual and extra-contractual damages due to Time's cancellation of the insurance policy. Time contends rescission was valid due to material misrepresentation on the part of the Caplingers in their application for coverage. Time argues the Caplingers' failure to disclose Mary

Caplinger's pre-existing diagnosis of peripheral vascular disease, atherosclerosis, diagnostic testing related to said diagnosis, and a later prescription for Trental on their application for health insurance, was a valid basis for rescission of the health insurance policy.

Caplinger claims Time's rescission of the policy after Mary contracted colon cancer was inappropriate. He claims his wife disclosed her condition to their insurance salesman, Chad Schaeffer, in the early stages of the application process. He argues Schaeffer is an agent of Time and, therefore, Time should be imputed with knowledge of Mary's condition. Finally, he contends Mary's diagnosis of atherosclerosis was not material to the issuance of her insurance policy.

## DISCUSSION

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981).

Few facts are disputed in this case. The undisputed deposition testimony of Dr. Thomas J. Vitale is that: (1) On March 21, 2002, he diagnosed Mary Caplinger with severe peripheral vascular disease with claudication; (2) Mary Caplinger underwent diagnostic testing on March 29, 2002, related to her circulatory condition; and (3) Mary Caplinger was prescribed Trental, an oral medication intended to improve her circulation on March 29, 2001; and (4) This prescription was later refilled at least 9 times. Caplinger did not disclose any of the above information to Time

during his telephone interview on August 3, 2003.

Applying the summary judgment standard, the Court is confronted with two possible genuine issues of material fact for the jury: (1) Whether the non-disclosure of Mary Caplinger's atherosclerosis was material to Time's acceptance of her application? (2) Whether the Caplinger's insurance salesman, Chad Schaeffer, was acting as Time's agent during the Caplinger's application process? Time contends there exists no genuine dispute regarding materiality, and, therefore, summary judgment should be granted as a matter of law. Furthermore, Time argues Schaeffer's undisputed deposition testimony reveals he is not an "agent" of the company. Consequently, Time cannot be imputed with any knowledge Schaeffer may have had regarding Mary's condition. The Court, applying Illinois law to the undisputed facts, agrees with Time.

Under the Illinois Insurance Code, an insurance contract may be rescinded for misrepresentation in the application process under two distinct circumstances: (1) where the erroneous or incomplete information is provided with "an intent to deceive"; and (2) where the false or incomplete information in the application given by the applicant "materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154. "The statute's provisions are to be read in the disjunctive, so that either an actual intent to deceive or a material misrepresentation which affects the acceptance of the risk or the hazard to be assumed can defeat or avoid the policy." *National Blvd. Bank v. Georgetown Life Ins. Co.*, 472 N.E.2d 80, 86 (Ill. App. Ct. 1984) *citing Campbell v. Prudential Ins. Co.*, 155 N.E.2d 9, 10 (Ill. 1958); *Hatch v. Woodmen Accident & Life Co.*, 409 N.E.2d 540, 543 (Ill. App. Ct. 1980). Further, Illinois courts have held an insurance company need not independently investigate the truthfulness of applicants' answers, but may instead rely upon the information contained in the insurance application where there is nothing

to imply certain answers may be untrue. *See Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 36 (7th Cir. 1971), *citing Metropolitan Life Ins. Co. v. Moravec*, 73 N.E. 415, 416 (Ill. 1905).

Caplinger argues a different standard for rescission applies under the Illinois Health Insurance Portability and Accountability Act (hereinafter "HIPAA"), 215 ILCS 97/1, which sets out five exceptions to limit the termination of certain health insurance policies. (*See* Doc. 36, p. 11-13). Caplinger contends Time must show that he falls within the fraud exception which requires the insured "made an intentional misrepresentation of material fact under the terms of the coverage." (*See* Doc. 36, p. 11-12, *citing* 215 ILCS 97/50(B)(2)).

Time argues the HIPAA provision cited by Caplinger applies only to "group health plans." (Doc. 37, p. 11-12) *citing* 215 ILCS 97/5. Time cites *Molnar v. Conseco Medical Insurance Co.*, 830 N.E.2d 800, 807 (Ill. App. Ct. 2007), which held HIPAA did not govern in the case since it involved an individual insured and not a "group health plan." The Court finds HIPAA does not apply in this case. After all, HIPAA's purpose is to regulate the formation and operation of health care purchasing groups while supporting the development of strong and efficient markets for the basic health care needs of Illinois employers, employees, and their dependents. *See* 215 ILCS 123/5. Furthermore, the Court determined the applicable law is 215 ILCS 5/154 at the hearing on the motion for summary judgment, and Caplinger's counsel did not argue otherwise. Therefore, "intent to deceive" is not an issue in this case.

The first question before the Court is whether Caplinger's non-disclosure during the telephone interview materially affected the risk accepted or hazard assumed by Time. 215 ILCS 5/154.

"In order to determine whether a misrepresentation is material, the court must consider

whether it was one which might reasonably have influenced the insurer in deciding whether to accept or reject the risk . . . or whether different conditions would have been imposed." *Great West Steel Industries, Ltd. v. Northbrook Ins. Co.*, 484 N.E.2d 847, 853 (Ill. App. Ct. 1985) (citations omitted). Illinois law does not excuse an applicant's failure to provide relevant information based on the applicant's belief the information is "minor and not material enough to mention" because it is the insurer's job to determine material information based on the applicant's complete disclosure. *New England Mut. Life Ins. Co. v. Bank of Illinois in DuPage*, 994 F.Supp. 970 (N.D. Ill. 1998).

The deposition testimony of Darinka Sever, a Time underwriting manager, goes to the issue of materiality. Sever oversees the department dealing with rescission of coverage. She explains the company's standard for rescission is whether or not the medical information which the insured omitted from the enrollment form was material to the issuance of coverage, *i.e.* whether Time would have rejected the application with knowledge of the condition. (*See* Sever Dep., p. 67-68). Sever claims that in every instance in which an applicant has peripheral vascular disease, the underwriter should decline the application and refuse coverage. (*See* Sever Dep., p. 78-80).

In this case, Time performed a telephone interview with Raymond Caplinger, while Mary was present, on August 3, 2003. (Def. Exh. 4). Caplinger was asked the following questions: Whether he or his wife had been diagnosed, received treatment for or consulted a physician concerning any heart or circulatory problems other than Mary's high blood pressure? Whether either one had undergone any diagnostic testing in the last 10 years? Whether the proposed insured has taken any medication within the last 12 months? Whether there were any medical conditions discussed with his agent that were not discussed during the telephone interview? Whether there was

any other medical history which either he or his wife wanted to disclose to the company? (*See* Def. Exh. 3; Def. Exh.4). The interview transcript reveals Caplinger made no mention of Mary's atherosclerosis/peripheral vascular disease, related diagnostic testing, or the Trental prescription during the interview. (Def. Exh. 4)

Once Time issued the policy, Raymond and Mary Caplinger signed the Acceptance of Offer and Attestation form on September 9, 2003, verifying the enrollment form and any amendments were complete and true. (*See* Schaeffer Dep., p. 85; Def. Exh. 4).

The non-disclosure of Mary's condition was material to Time's decision to issue coverage. Caplinger had ample opportunity to disclose Mary's condition before signing the Offer and Attestation form but failed to do so. No reasonable jury could determine Mary's condition was immaterial.

Caplinger contends the Court cannot rely on Sever's deposition testimony in this matter because defense evidence "must be uncontradicted, unimpeached, and from a disinterested witness." (Doc. 36, p. 14). Caplinger cites *Celotex Corp. v. Catrett*, 477 U.S. 617 (1986). Time argues *Celotex* makes no such requirement nor does any Seventh Circuit authority. (*See* Doc. 37, p. 18). Again, the Court agrees with Time.

The second issue in this case is whether Caplinger disclosed his wife's atherosclerosis to Time via Chad Schaeffer, the insurance salesman. Caplinger argues Schaeffer is an agent of Time, and, therefore, Time is imputed with the knowledge possessed by Schaeffer.

On July 21, 2003, before the Time telephone interview, Schaeffer visited the Caplinger home to fill out initial paperwork and educate the Caplingers on the application process. (*See* Schaeffer Dep., p. 70, 71). At that time, Mary Caplinger mentioned to Schaeffer that she had a medical

condition.  (*See* Schaeffer Dep., p. 72-75).  In his deposition testimony, Schaeffer states he does not remember the name of the condition; he also claims he had never heard of such a condition.  *Id*.  Caplinger argues this conversation with Schaeffer constitutes a disclosure of Mary's condition to Time.  Time argues this incident was not a disclosure because Schaeffer did not inform Time of this conversation before the issuance of the Caplingers' policy.  Furthermore, Time contends Schaeffer was never its agent.

"In Illinois, the general rule is that an insurer who knows the truth about an insurance applicant's medical condition before issuing the policy is estopped from avoiding the policy on the basis that the insured made material misrepresentations about that condition in the application." *New England Mut. Life Ins. Co.*, 994 F.Supp. at 982, *citing Moone v. Commercial Cas. Ins. Co.*, 112 N.E.2d 626 (Ill. App. Ct. 1953); *Nogulich v. Metropolitan Life Ins. Co.*, 46 N.E.2d 396 (Ill. App. Ct. 1943); *Smith v. Metropolitan Life Ins. Co.*, 550 F.Supp. 896 (N.D.Ill.1982).  Caplinger argues the issue of whether Schaeffer is an agent is a question of fact for the jury.  In Illinois, courts have said a "question of whether an insurance broker is an agent for the insured, the insurer, or both is generally question of fact." *A&B Freight Line, Inc. v. Ryan*, 576 N.E.2d 563 (Ill. App. Ct. 1991).  But "when the evidence clearly shows that the insurance broker is the agent of the insured, the issue becomes question of law." *Id.*

In this case, Time argues Schaeffer is not its agent as a matter of law.  Time points out the "Marketing Agreement" between Time and Thrivent, Schaeffer's employer, explicitly states Schaeffer is an "independent contractor."  (Doc. 37, p. 10).  Illinois law relies upon the insurance salesman's conduct, however, not his title, to determine his agency status.  *Krause v. Pekin Life Ins. Co.*, 551 N.E.2d 395, 399 (Ill. 1991).

"To determine whether a certain individual acted as a broker or an agent, we must analyze the following four factors: (1) who first set that individual in motion; (2) who controlled that individual's action; (3) who paid that individual; and (4) whose interests that individual was protecting." *Founders Ins. Co. v. White*, 856 N.E.2d 506, 510 (Ill. App. Ct. 2006). Here, Time argues, based on the undisputed deposition testimony of Schaeffer, his actions were those of a broker, *i.e.* Schaeffer was an agent for the insured, not the insurer. The Court agrees.

First, Schaeffer was approached by Caplinger regarding the sale of insurance. (*See* Caplinger Dep., p. 47). At work, Schaeffer reported only to Thrivent supervisors. (*See* Schaeffer Dep., p. 35). Time neither directly paid Schaeffer nor did Time control his day-to-day work operations. (*See* Schaeffer Dep., p. 38). Further, in Schaeffer's letter (Doc. 36-16) written to Time's underwriting correspondent on November 16, 2004, he advocates the Caplingers' interests by suggesting they unintentionally left out Mary's condition in the interview. Moreover, Schaeffer testified in his deposition that Time only occupied 8% of his total business. (*See* Schaeffer Dep., p. 42).

Caplinger cites *State Security Insurance Company v. Burgos*, 583 N.E.2d 547, 551 (Ill. 1991), in support of his apparent agency theory. In *Burgos*, the Illinois Supreme Court found apparent agency where the broker was the main link between the insurer and the insured. *Burgos*, 583 N.E.2d at 554. In that case, the broker delivered contracts, collected the insurance premiums, and serviced the insurance policy. *Id*. In this case, Schaeffer helped the Caplingers fill out the first part of their enrollment form. (*See* Doc. 36, p. 16). He also set up payment procedures, explained the policy, and serviced any concerns of the insured. Caplinger contends these actions demonstrate Schaeffer was an agent for the insurer. The Court finds Schaeffer performed such services for the Caplingers' benefit. He was their agent. No reasonable jury could determine Schaeffer served as

an agent of Time.

## CONCLUSION

In conclusion, Defendant's motion for summary judgment (Doc. 28) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly. The parties shall bear their own costs.

**IT IS SO ORDERED.**

DATED: 07/10/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
Chief United States District Judge
